UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PETER FISCHER, | ) | |
| *individually and on behalf of all others similarly situated*, | ) ) ) | No. 4:21-cv-00582-SEP |
| Plaintiffs, | ) ) | This Document Applies To: 21-cv-00583 |
| v. | ) ) | 21-cv-00706 21-cv-00709 |
| CONOPCO, INC., d/b/a "UNILEVER," DOES 1 through 10, | ) ) ) | 21-cv-00710 21-cv-00781 21-cv-00782 |
| Defendants. | ) ) | 21-cv-00888 21-cv-00892 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND TO STAY LITIGATION**

Pursuant to the Federal Arbitration Act (9 U.S.C. §§ 3-4), Defendant Conopco, Inc., d/b/a "Unilever" ("Unilever") moves the Court for an order to compel Plaintiffs Michael Muller ("Muller"), Jennifer Sandbach ("Sandbach"), Drew Huskey ("Huskey"), Peter Fischer ("Fischer"), and Brandi Goulart ("Goulart") ("Plaintiffs") to submit their claims against Unilever to binding arbitration and to stay all proceedings in these actions.[1]

---

[1] *Michael Muller v. Conopco, Inc., d/b/a "Unilever,"* No. 4:21-cv-00583-SEP (E.D. Mo.) ("*Muller*"); *Jennifer Sandbach v. Conopco, Inc., d/b/a "Unilever,"* No. 4:21-cv-00706-SEP (E.D. Mo.) (*"Sandbach I"*); *Jennifer Sandbach v. Conopco, Inc., d/b/a "Unilever,"* No. 4:21-cv-00709-SEP (E.D. Mo.) ("*Sandbach "*); *Drew Huskey v. Conopco, Inc., d/b/a "Unilever,"* No. 4:21-cv-00710-SEP (E.D. Mo.) ("*Huskey I*"); *Drew Huskey v. Conopco, Inc., d/b/a "Unilever,"* No. 4:21-cv-00781-SEP (E.D. Mo.) ("*Huskey II*"); *Peter Fischer v. Conopco, Inc., d/b/a "Unilever,"* No. 4:21-cv-00782-SEP (E.D. Mo.) ("*Fischer II*"); *Brandi Goulart v. Conopco, Inc., d/b/a "Unilever,"* No. 4:21-cv-00888-SEP (E.D. Mo.) ("*Goulart I*"); *Brandi Goulart v. Conopco, Inc., d/b/a "Unilever,"* No. 4:21-cv-00892-SEP (E.D. Mo.) ("*Goulart II*"). This motion does not apply to *Peter Fischer v. Conopco, Inc., d/b/a "Unilever,"* No. 4:21-cv-00582-SEP (E.D. Mo.) ("*Fischer I*").

# INTRODUCTION

Plaintiffs allege that Unilever deceptively markets various antiperspirants. The complaints each allege that Plaintiffs purchased the products from a retailer while in Missouri.[2] Plaintiffs recently provided discovery that reveals Plaintiffs purchased the products from Walmart's website, Walmart.com. Based on this newly acquired information, Unilever moves to compel arbitration because the Walmart "Terms of Use" contain a mandatory arbitration agreement that expressly includes claims against Walmart suppliers, such as Unilever. This Court and two others in this district recently granted motions to compel arbitration in similar cases filed by this same plaintiff's counsel involving other personal care products. *See Goulart v. Edgewell Personal Care Co.,* No. 19-cv-02559-SEP, 2020 WL 3000433, at *2 (E.D. Mo. June 4, 2019)[3]; *Been v. Edgewell Personal Care Co.*, 2020 WL 1531015, at *3 (E.D. Mo. Mar. 31, 2020) (Clark, J.) ("*Been II*"); *Been v. Edgewell Personal Care Co.*, 2020 WL 2747293, at *2 (E.D. Mo. May 27, 2020) (Autrey, J.) ("*Been I*"). Unilever asks this Court do the same here and stay these actions and order the parties to arbitrate Plaintiffs' claims.

# STATEMENT OF FACTS

A.    **Plaintiffs entered into a contract with Walmart.**

Walmart maintains a website, www.walmart.com, and mobile application from which customers are able to purchase merchandise online. Declaration of Kartikay Sahay ¶ 2 (Ex. A). Any customer in Missouri (or elsewhere) who purchases merchandise on Walmart.com must complete the complete the checkout process and provide information regarding delivery or pickup options, and payment method. *Id.* ¶ 5. To place the order, the customer must click on the "Place

---

[2] *See Muller* Compl. ¶ 79; *Huskey I* Compl. ¶ 75, *Huskey II* Compl. ¶ 71, *Sandbach I* Compl. ¶ 71, *Sandbach II* Compl. ¶ 74, *Fischer II* Compl. ¶ 70; *Goulart I* Compl ¶ 73, *Goulart II* Compl. ¶ 74.

[3] Goulart is also a plaintiff in this antiperspirant litigation.

order" button. *Id.* ¶ 6. Located next to the "Place order" button is the following notice: "By placing this order, you agree to our Privacy Policy and Terms of Use." *Id.* The notice contains visible hyperlinks to both the Privacy Policy and Terms of Use. *Id.* ¶ 5. By placing an order on Walmart.com, each customer voluntarily agrees to abide by Walmart's Privacy Policy and Terms of Use. *Id.* ¶ 6.

Plaintiffs have served discovery which shows that they purchased the Unilever products at issue on Walmart.com. *See* Pls.' Resp. to Interrogs. and Req. for Production (collectively attached as Ex. B). Specifically, Muller states that on November 18, 2020, he purchased an Axe-branded Anti Marks Protection men's antiperspirant stick from Walmart.com. *Id.* at 2. Huskey states that on January 25, 2021, he purchased a Degree-branded MotionSense UltraClear Black+White antiperspirant stick for men and a Degree-branded MotionSense UltraClear Black+White antiperspirant spray for men from Walmart.com. *Id.* at 4, 6. Sandbach states that on February 2, 2021, she purchased a Degree-branded MotionSense UltraClear Black+White antiperspirant spray for women and a Degree-branded MotionSense UltraClear Black+White antiperspirant stick for women from Walmart.com. *Id.* at 8, 10. Fischer states that on January 25, 2021, he purchased a Dove-branded Men+Care antiperspirant spray for men from Walmart.com. *Id.* at 12. Goulart produced receipts that show that she purchased a Dove-branded Invisible antiperspirant dry spray and Dove-branded Advance Care antiperspirant stick on Walmart.com. *Id.* at 14, 16. By placing orders at Walmart.com, Plaintiffs agreed to abide by Walmart's Terms of Use. The Terms of Use that were in effect November 2020 through February 2021 are attached to the Declaration of Stacey Krsulic (Ex. C).[4]

---

[4] Because there are no material differences among the versions, all citations are to "the version in effect on November 18, 2020." *See* Terms of Use (Ex. C-1).

### B. Plaintiffs agreed to arbitrate all claims related to Walmart suppliers.

The Terms of Use apply to "Walmart," which includes "[Wal-Mart.com](Wal-Mart.com) USA, LLC and Walmart Stores, Inc. and any subsidiaries of Wal-Mart Stores, Inc. (including any subsidiaries that Walmart, Inc. may form or acquire in the future) and their affiliates, directors, officers, employees and agents" and "Walmart Entities," which are defined as "Walmart; its suppliers, vendors, contractors, and licensors." Terms of Use Ex. C-1 at 1. Unilever was and is a Walmart supplier and therefore is a "Walmart Entity" pursuant to the Terms of Use. Declaration of Rob McCulley ¶¶ 3-5 (Ex. D).

The Terms of Use state up front in capitalized letters that they contain an arbitration agreement and a class action waiver:

> IMPORTANT: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 20 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. **THIS MEANS THAT YOU AND THE WALMART ENTITIES ARE EACH GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND.** IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.

Terms of Use (Ex. C-1 at 1) (emphasis added). The arbitration agreement further provides:

> PLEASE READ THIS SECTION CAREFULLY. IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT. Using or accessing the Walmart Sites constitutes your acceptance of this Arbitration provision. Please read it carefully as it provides that you and Walmart will waive any right to file a lawsuit in court or participate in a class action for matters within the terms of the Arbitration provision.
>
> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART,

> WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT WALMART AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION. The arbitration will be administered by Judicial Arbitration Mediation Services, Inc. ("JAMS") pursuant to the JAMS Streamlined Arbitration Rules & Procedures effective July 1, 2014 (the "JAMS Rules") and as modified by this agreement to arbitrate. The JAMS Rules, including instructions for bringing arbitration, are available on the JAMS website at http://www.jamsadr.com/rules-streamlined-arbitration. The Minimum Standards are available at http://www.jamsadr.com/consumer-arbitration.
>
> * * *
>
> These Terms of Use will be governed by and construed under the laws of the United States (including federal arbitration law) and the State of California, without regard to conflicts of law principles.

*Id.* at 23-24. JAMS Rule 8(b), incorporated into the arbitration agreement, states:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*See* JAMS Streamlined Arbitration Rules & Procedures, July 1, 2014 (Ex. E at 11).

## **LEGAL STANDARD**

"Arbitration agreements are governed by the Federal Arbitration Act ("FAA")." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). The FAA provides:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

5

> arising out of such contract or transaction ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court" that would otherwise have jurisdiction over the suit "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms. *Concepcion,* 563 U.S. at 339. As this Court has recognized, the public policy favoring arbitration is so strong that, once an arbitration agreement is proven to be valid, "'[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Goulart*, 2020 WL 3000433, at *2 (quoting *Lyster v. Ryan's Family Steak Houses, Inc.,* 239 F.3d 943, 945 (8th Cir. 2001)).

## ARGUMENT

The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce."[5] 9 U.S.C. § 2; *see Donaldson Co. v. Burroughs Diesel, Inc.,* 581 F.3d 726, 730–31 (8th Cir. 2009); *Pro Tech Indus., Inc. v. URS Corp.,* 377 F.3d 868, 871 (8th Cir. 2004). Both criteria are met here: (i) the arbitration agreement is in writing (see Terms of Use Ex. C-

---

[5] In addition to its arbitration rights under the FAA, Unilever is also entitled to arbitration under the California Arbitration Act. *See* Cal. Civ. Code 1280 *et seq.*

6

1); and (ii) transactions through Walmart.com plainly involve commerce. When Plaintiffs purchased products on Walmart.com, they voluntarily agreed to abide by Walmart's Terms of Use, including the arbitration agreement. By its terms, the arbitration agreement covers all claims arising out of or relating to the Terms of Use or the relationship between Plaintiffs and the Walmart Entities, including those set forth in the complaints. As set forth below, this Court should compel Plaintiffs to submit these claims to arbitration for three reasons: (1) the parties entered into a valid arbitration agreement; (2) Plaintiffs' claims are covered by the arbitration agreement; and (3) the arbitration agreement delegates any issues pertaining to arbitrability to the arbitrator.

**I.     The Court should compel the parties to arbitrate Plaintiffs' claims.**

    **A.     Plaintiffs entered into a valid arbitration agreement.**

"If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015). In Missouri, a valid arbitration agreement exists when there is an offer, acceptance, and mutual consideration. *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) The arbitration agreement at issue is a valid agreement because Walmart presented an offer, Plaintiffs accepted that offer by purchasing a product through the website, and mutual consideration exists between the parties.

With online agreements, courts focus on whether the accepting party had reasonable notice of and manifested assent to the agreement. *Major v. McCallister*, 302 S.W.3d 227, 229 (Mo. Ct. App. 2009). A common form of an online agreement is a "browsewrap" agreement. *Id.* Browsewrap agreements inform users that the user's use of the website constitutes acceptance of the terms of the online agreement. *Id.* at 230. Walmart advised Plaintiffs that "By placing this order, you agree to our Privacy Policy and Terms of Use." Sahay Decl. ¶ 5 (Ex. A). The notice contained a hyperlink to the

Terms of Use. *Id*. Thus, Plaintiffs had knowledge of the applicable Terms of Use before purchasing any product. Courts have consistently upheld browsewrap agreements when the user has "actual or constructive knowledge of a site's terms and conditions prior to using the site." *Major,* 302 S.W.3d at 229. A customer that has notice of the online terms and conditions made available to her on the website is bound by those terms. *Id.* As a result, Plaintiffs accepted Walmart's offer subject to the Terms of Use, including the arbitration agreement. *See, e.g.*, *Been II*, at *3 ("When [Plaintiff] purchased the women's razor from the Schick website, she agreed to certain terms and conditions and thereby entered into a contract with Defendants."); *Been I*, at *2 (same) (citing *Been II*); *Goulart,* 2020 WL 3000433, at *4 (same) (citing *Been II*).

The arbitration agreement also is supported by mutual consideration. The parties exchanged reciprocal promises to be bound by final arbitration. The mutuality of the arbitration agreement is sufficient consideration. *See McIntosh v. Tenet Health Sys. Hosps., Inc./Lutheran Med. Ctr.*, 48 S.W.3d 85, 89 (Mo. Ct. App. 2001) (finding sufficient consideration when an arbitration agreement contemplated an agreement between the parties to submit all future claims to mutually binding arbitration); *Vill. of Cairo v. Bodine Contracting Co.*, 685 S.W.2d 253, 263 (Mo. Ct. App. 1985) ("[M]utual promises to settle disputes are the quid pro quo for the arbitration agreement."). Thus, the arbitration agreement in Walmart's Terms of Use contains sufficient consideration.

      **B.**     **Plaintiffs' claims are covered by the arbitration agreement.**

The Walmart Terms of Use inform customers at the beginning of the agreement that "***you and the Walmart Entities are each giving up the right to sue each other in court or in class actions of any kind***." Terms of Use (Ex. C-1 at 1) (emphasis added). This includes "all disputes arising out of or related to these Terms of Use or any aspect of the relationship between [the customer] and Walmart, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory[.]" *Id.* at

24. Plaintiffs' claims against Unilever, which are based on alleged misrepresentations on the antiperspirant labels, fall under this broad umbrella and therefore are subject to arbitration.

### C. Any dispute regarding the scope of the arbitration agreement must be resolved by the arbitrator, not the Court.

Parties are free to agree to arbitrate threshold or "gateway" questions of arbitrability. *RentBABCenter, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (noting that this "reflects the fundamental principle that arbitration is a matter of contract"). The Supreme Court recently held that when an agreement delegates questions of arbitrability to an arbitrator, "a court *may not* override the contract" and "*possesses no power* to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (emphasis added). Following *Schein*, this Court recently found in *Goulart* that "if a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court *may not* decide the arbitrability issue." 2020 WL 3000433, at *5. That is the situation here.

As with the arbitration agreements in *Goulart*, *Been I*, and *Been II*, the arbitration agreement at issue here states that the arbitration shall be administered through JAMS. Terms of Use Ex. C-1 at 23 (stating that arbitration will be administered pursuant to the JAMS Streamlined Arbitration Rules & Procedures); *see Goulart*, 2020 WL 3000433, at *4; *Been II*, at *3; *Been I*, at *2. Thus, as also found in *Goulart*, *Been I*, and *Been II*, the arbitration agreement here incorporates JAMS Rule 8(b), which provides:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

9

Ex. E at 11; *see Goulart*, 2020 WL 3000433, at *4; *Been II*, at *3; *Been I*, at *2; *see also Murphy v. Oracle Am., Inc.*, 2019 WL 2525727, at *2 (E.D. Mo. June 19, 2019) (recognizing the incorporation of JAMS rules).[6] By entering into an agreement that incorporates this rule, Plaintiffs have agreed that any dispute over "the formation, existence, validity, interpretation, or scope of the agreement" will be submitted to the arbitrator. Accordingly, the Court should delegate any such challenges by Plaintiffs to the arbitrator.

## II.     These eight actions should be stayed pending arbitration.

As this Court has found, "[t]he [FAA] generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it." *Goulart*, 2020 WL 3000433, at *6 (quoting *Green v. Super Shuttle Intern., Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (citing 9 U.S.C. § 3)). As was ordered in *Goulart*, *Been I*, and *Been II*, Unilever requests that the Court stay these eight actions pending arbitration.

## CONCLUSION

For the foregoing reasons, Unilever respectfully requests that the Court grant its Motion to Compel Arbitration and compel Plaintiffs to arbitrate their claims against Unilever and any issues related to arbitrability on an individual basis before the Judicial Arbitration and Mediation Services. Unilever further requests that this Court enter an order immediately staying all activity in these eight actions.

---

[6] The Missouri Supreme Court also has recognized that incorporation of an arbitration service's rules (i.e., AAA), and specifically, the rule delegating arbitrability issues to the arbitrator, is valid, and parties are bound by those rules. *See Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 116 (Mo. 2018); *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36 (Mo. 2017).

| | |
|---|---|
| Dated: December 1, 2021 | Respectfully submitted, |

By: */s/ James P. Muehlberger*
James P. Muehlberger, #51346MO
Douglas B. Maddock, Jr., #53072MO
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
jmuehlberger@shb.com
dmaddock@shb.com

*Attorneys for Defendant Conopco, Inc., d/b/a "Unilever"*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on December 1, 2021, the foregoing document was served upon the following via the Court's electronic filing system and/or electronic mail:

Daniel F. Harvath
Harvath Law Group, LLC
75 W. Lockwood, Suite #1
Webster Grove, MO 63119
dharvath@harvathlawgroup.com

*Attorney for Plaintiff*

                  */s/ James P. Muehlberger*